REQUESTED BY: Senator Jerome Warner Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Warner:
You have asked, for the purpose of determining whether additional legislation is required, whether the State Board of Equalization and Assessment, in setting sales and income tax rates pursuant to Neb.Rev.Stat. § 77-2715.01(1) (Supp. 1982) on or before November 1 of this year, is authorized or required to take into account the fact that the administration of county welfare programs has been transferred to the state, effective July 1, 1983. It is our conclusion that it is required to take such fact into account.
Neb.Rev.Stat. § 68-704 (Reissue 1981) created in each county a county board of public welfare, and following sections prescribed its duties. Each county board of public welfare had employees, and, obviously, expenses. LB 522, passed in the 1982 session, repealed all the sections dealing with county boards of public welfare, and adopted Neb.Rev.Stat. § 68-717 (Supp. 1982), which provides:
 The Department of Public Welfare shall assume the sole responsibility for all public assistance delegated to county boards and administered by the county boards or divisions of public welfare, including, but not limited to, aid to families with dependent children, emergency assistance, general assistance or direct county relief, medical assistance, assistance to the aged, blind, or disabled, crippled children's services, commodities, and food stamps.
Section 68-718 provides for the transfer of all furniture, equipment, books, files, records, and personnel utilized by the county boards of public welfare to the Department of Public Welfare. Section 45 of LB 522 provided that the provisions of the act should become operative on July 1, 1983.
Neb.Rev.Stat. § 84-701 (Reissue 1981) provides for the state's fiscal year to run from July 1 to June 30, but the state board, in setting sales and income tax rates, sets the income tax rates for taxable years beginning in the subsequent calendar year, and the sales tax rates to be effective from January 1 through December 31 of the year after the setting of the rates. Appropriations, as a rule, and certainly in fiscal years ending in an odd number, will have been made only until June 30, but the sales and income taxes will be collected at the rates prescribed by the state board for the entire calendar year (unless changed pursuant to subsection (2) of § 77-2715.01.) Obviously, then, the rates must be set so as to meet the expected expenses of the state beyond the end of the fiscal year, even though no appropriations have been made for such expenses.
In order to take care of this problem, § 77-2715.01(1) provides in part:
 Recognizing that an adequate cash flow is necessary to maintain the orderly implementation of various legislative acts, it is mandatory that the funding of those acts which have a fiscal impact beyond a current appropriations year be considered when setting the sales and income tax rates. Accordingly, the purpose of this subsection is to provide that the State Board of Equalization and Assessment shall set rates based on appropriations and the express obligations of the Legislature for the two succeeding calendar years following the rate-setting date. Such action will provide an adequate cash flow, the orderly implementation of the funding of acts as intended by the Legislature, and eliminate drastic fluctuations in the state sales and income tax rates.
We have in the past had some difficulty in determining precisely what was intended by the term `express obligations,' but we have no difficulty in saying that the assumption of the total responsibility for administration of the county welfare program is such an obligation. The statutes prescribing the duties of the Department of Public Welfare have already been passed, and are on the books. The fact that the department will not assume some of its responsibilities until July 1 of next year is of no significance. It will automatically do so as of that date, and will, of course, have additional expenses by reason thereof.
These expenses are in no different category than any of the other expenses of state government which will occur after June 30, 1983. No appropriations have been made for those expenses, either, but the state board must assume that state government will go on after that date. The board would no more be authorized to ignore the expenses incident to LB 522 than it would be authorized to ignore all of the other expenses of state government after the end of this fiscal year. Section 77-2715.01 requires the board to take such expected expenses, for which appropriations will presumably be made by the Legislature in 1983, into account in setting tax rates.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General